## IN THE UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| AMERICAN POOLPLAYERS ASSOCIATION, INC., | ) | |
| | ) | |
| 1000 Lake Saint Louis Blvd., Suite 325 Lake Saint Louis, MO 63367 | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | |
| FRANK MAIALETTI, | ) ) | |
| 4428 Unruh Ave. Philadelphia, PA 19135 | ) ) ) | |
| and | ) ) | |
| MINDY MAIALETTI, | ) ) | |
| 4428 Unruh Ave. Philadelphia, PA 19135 | ) ) ) | |
| Defendants. | ) | |

## VERIFIED COMPLAINT

Plaintiff, American Poolplayers Association, Inc. (the "APA"), by and through its undersigned counsel, and for its Verified Complaint (the "Complaint") against Frank Maialetti and Mindy Maialetti (collectively, the "Defendants"), seeking injunctive and other appropriate relief.

## THE PARTIES

1.      Plaintiff APA is a Missouri corporation with its principal place of business in Lake St. Louis, Missouri. APA is the franchisor of APA franchised leagues throughout

1

the country, including Rack Em Up, LLC d/b/a APA of Philadelphia ("APA of Philadelphia").

2.      Defendant Frank Maialetti is a natural person and citizen of the Commonwealth of Pennsylvania with an address of 4428 Unruh Ave., Philadelphia, Pennsylvania 19135.

3.      Defendant Mindy Maialetti is a natural person and citizen of the Commonwealth of Pennsylvania with an address of 4428 Unruh Ave., Philadelphia, Pennsylvania 19135.

## JURISDICTION AND VENUE

4.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship and the amount in controversy exceeds $75,000.  This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

5.      Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this District.

## FACTS

**A.      APA and Its Proprietary Handicap System.**

6.      APA is a Missouri-based franchisor with franchisees in 49 states, Canada, Japan, and Singapore, all of whom sign franchise agreements.

7.       APA is a centrally controlled nationwide amateur pool organization that sanctions and oversees APA 8-Ball League and APA 9-Ball League in the United States,

2

the Canadian Poolplayers Association in Canada, Japanese Poolplayers Association in Japan, and APA of Singapore in Singapore.

8.      APA has approximately 270,415 active members who are eligible to play in APA's franchised and company-owned leagues.

9.      What makes APA unique and revolutionary is its unique and proprietary handicap system known as *The Equalizer®*. *The Equalizer®* is a handicap system that uses a confidential, proprietary formula to level the playing field in APA Leagues.

10.     Only certain people in APA's franchise system have access to NEXUS, which is the system that keeps track of all the information that is utilized by *The Equalizer®* to determine a pool player's handicap.

11.     APA requires anybody who has access to the NEXUS system and any other Confidential Information to sign confidentiality and non-competition contracts such as the ones signed by Mr. and Mrs. Maialetti in this case.

12.     *The Equalizer®* as well as APA's system for establishing, operating, and developing local amateur pool leagues are what makes APA unique, what drives franchisees to join APA's franchise system, and what drives amateur pool players across the world to APA's Leagues.

13.     Without *The Equalizer®* and its system for establishing, operating, and developing local amateur pool leagues, APA would not be a successful, unique franchisor and APA would not be able to garner the over 270,000 members it has to date.

3

**B.**    **Defendants' Affiliation With APA and Their Agreements.**

14.    In Philadelphia, one of APA's franchisees is Rack Em Up, LLC, a Pennsylvania limited liability company that does business as APA of Philadelphia.

15.    On or about July 29, 2014, Frank Maialetti became employed by APA of Philadelphia as an Area Manager.

16.    In connection with that employment, Frank Maialetti signed a confidentiality and non-competition agreement.

17.    Mr. Maialetti's job responsibilities as an Area Manager included: (1) assisting the local League Operator, Jeff Duda, with tournaments by watching shots and clarifying rules for players in the tournament; (2) assisting players on league nights with questions they might have regarding the League in general and rule clarifications; and (3) helping to build teams and recruit players to join the League.

18.    Mr. Maialetti did not have access to APA's NEXUS System, which contains APA's most highly Confidential Information.

19.    NEXUS is a comprehensive web-based program customized for League management and it contains confidential information including, but not limited to the following: (1) information indicating how *The Equalizer*® calculates player handicaps; (2) player contact information; (3) member history including history of the teams on which each player has played; (4) the locations out of which each player has played; (5) data from every match each player has played; (6) the tournaments in which each player has participated in; (7) the formats that each player has played; (8) a list of all Host Locations that host APA League play along with information about the primary contacts

4

at each Host Location; and (9) information gathered by APA franchisees about other locations with pool tables who may serve as future Host Locations.

20.    Some of the other basic functions performed by NEXUS include: (1) generating scores based on data input from the scoresheets; (2) using those scores to administer the handicap system and calculate the skill levels of players; (3) working with standard and oversize tables; (4) compiling data; (5) housing contact information for every Host Location and member in the League area; and (6) creating schedules and scoresheets, tracking finances and processing memberships.

21.    Some of the statistics NEXUS can provide based on the data that is entered and compiled in the system are: (1) how many teams overall are actively playing (8-Ball and 9-Ball, as well as other formats) —in one area, or the entire network; (2) where the League is active within a League area; and (3) the average number of teams per Host Location throughout the network.

22.    Given the highly sensitive and confidential nature of the information contained in the NEXUS System, the APA does not allow franchisees or their employees or agents to access the system without signing confidentiality and non-competition agreements.

23.    As an Area Manager, Frank Maialetti did not have access to the NEXUS System.

24.    In January 2024, Frank requested access to the NEXUS System in furtherance of his goal of becoming a partner in APA. As a partner in APA, Frank would

share in the local league's profits, receive training on how to operate an amateur pool league, and receive training on the operations of APA's handicap system.

25.     Frank's access to NEXUS materially benefited him as it enabled him to see who played in the League, the locations that hosted the League, the locations that were potential hosts for league play, the confidential system used to calculate skill levels pursuant to **The Equalizer®**, the names and contact information of each team's captain (if you wanted to recruit a team to play in a different league, you would work with the team's captain), and the name and contact information for each Host Location, which would make it easier for Frank to figure out who to contact if he wanted to get his league into those locations.

26.     Having access to the NEXUS System would also benefit the Maialettis by giving them access to the same information a franchisee would use to operate their franchise business, including confidential information that APA only shares with franchisees and franchisees' staff, all of whom sign Confidentiality and Non-Competition Agreements if they are granted login credentials for NEXUS.

27.     Further, having access to NEXUS would give Frank a better understanding of how the League is structured and a greater insight to the overall APA system.

28.     In consideration for being granted access to the NEXUS System and/or being afforded an opportunity to pursue partnership in the APA, the Maialetti's both executed Confidentiality and Non-Competition Agreements.

6

29.    First, on January 26, 2024, Frank Maialetti executed another Confidentiality and Non-Competition Agreement ("Franks' Agreement"). Frank's Agreement is attached hereto as **Exhibit 1** and incorporated herein by reference.

30.    Then, on May 18, 2024, Mindy Maialetti executed a Confidentiality and Non-Competition Agreement ("Mindy's Agreement"). Mindy's Agreement is attached hereto as **Exhibit 2** and incorporated herein by reference.

31.    Without signing these agreements, the Maialetti's would not have been considered for partnership, and they certainly would not have been granted access to the NEXUS System.

32.    When they signed their Agreements, Frank and Mindy acknowledged that APA:

> [t]hrough substantial effort, experience and expense, has developed a quality, uniform system for establishing, operating and developing local amateur pool leagues (the "System") and that the distinguishing characteristics of the System include, but are not limited to, … (b) APA's uniform standards, specifications, policies, procedures, guidelines, rules, and methods for league operation, management, marketing and promotion [], (c) APA's proprietary software programs and/or application(s) for management and operations of its franchised leagues [], (d) ***The Equalizer*®** scoring and handicapping system that allows players of all abilities to compete, (e) APA's Training Programs, and (f) APA's on-going assistance and all other confidential and proprietary information concerning the methods and know-how for operating and promoting [APA] pool leagues, tournaments and events [] (collectively referred to here as the "Confidential Information").

Exhs. 1 and 2, p. 1.

33.     Frank and Mindy further acknowledged that the Confidential Information is "highly confidential and valuable, is comprised of information not generally known to competitors, and if disclosed to or used by competitors, would give them the advantages presently enjoyed by APA and its franchise owners." *Id.*

34.     Frank and Mindy also agreed that "[a]s a result of my affiliation with the [APA of Philadelphia], I may develop substantial knowledge of the Confidential Information and relationships with APA Members participating in the Franchised League, and potential APA Members, Host Locations who host league play and tournaments, and potential Host Locations sponsors' who support the Franchised League, and potential sponsors." *Id.*

35.     By executing their agreements, Frank and Mindy Maialetti agreed that for a period of two (2) years after termination of their affiliation with APA-Philadelphia, they would not directly or indirectly:

> (a)     Have any interest in as owner, partner, director, officer, employee, consultant, representative or agent, or otherwise engage in or lend knowledge or support to any non-APA pool league, tournament or event or any business operating any pool league, tournament or events within the Franchised Territory or any adjacent county;
>
> (b)     Engage in, support, or assist in the solicitation of any APA Members, Host Locations, or league sponsor that have participated in, or supported, the Franchised League to participate in, or support, any non-APA pool league, tournament or events within the Franchised Territory or any adjacent county;
>
> (c)     Have any interest in as owner, partner, director, officer, employee, consultant, representative or agent, or otherwise engage in or lend knowledge or support to any business engaged in franchising, licensing, or otherwise establishing or developing or managing a national or regional pool league operation.

8

36.    By executing their agreements, Frank and Mindy Maialetti further agreed that they:

    (a)    Will keep strictly confidential the Confidential Information, including, but not limited to, all lists and records of past and present APA Members, Host Locations, and sponsors, and potential APA members, potential Host Locations, and potential sponsors;

    (b)    Will not use the Confidential Information or the System (or any part thereof) in any other business or capacity outside of [his] affiliation with the Franchised League;

    (c)    Will not make any copies of any Confidential Information, including of the Operations Manual, or Software Program; and

    (d)    Will adopt and implement all reasonable procedures APA prescribes from time to time to prevent unauthorized use or disclosure of Confidential Information.

37.    Both Frank's Agreement and Mindy's Agreement provide "that APA is a third-party beneficiary of this Agreement and that APA may enforce the terms of this Agreement in any court of competent jurisdiction." Ex. 1, ¶ 6; Ex. 2; ¶ 6.

**C.    Defendants end their affiliation with APA-Philadelphia**

38.    On or about July 17, 2025, Defendants ended their affiliation with APA-Philadelphia.

39.    While Frank Maialetti regularly accessed APA's NEXUS System and/or made changes in the NEXUS System, his activity remained relatively stagnant until he accessed the system on July 4 and July 15, 2025 (48 hours before the Defendants ended their affiliation with APA).

40.    On July 23, 2025, APA sent a letter to Frank and Mindy Maialetti reminding them of their obligations under their agreements.   A true and correct copy of that July 23, 2025 letter is attached hereto as **Exhibit 3**.

41.    Sometime in August 2025, Frank Maialetti posted on Facebook promoting a new league coming in "Fall of 2025."   Frank Maialetti wrote: "Something pretty cool is coming to Philly, **Mindy Maialetti and I are starting something awesome!** #UltimatePool #ultimatepoolusa."   (emphasis added). A screenshot of Frank Maialetti's Facebook post is below:



42.    Sometime in August 2025, the Ultimate Pool League, a directly competitive amateur pool league, posted on Facebook regarding a new league being promoted by Frank and Mindy Maialetti.   Ultimate Pool USA wrote, "We're proud to announce the

10

official launch of the Ultimate Pool League – Philadelphia, **operated by Frank and Mindy Maialetti!**" (emphasis in original) A screenshot of the Ultimate Pool League's Facebook post is below:



43.    On August 26, 2025, APA discovered that Frank and Mindy Maialetti would, in fact, begin hosting and operating local amateur pool tournaments in

Philadelphia, Pennsylvania with the Ultimate Pool League.   A screenshot of the 8-ball

tournament being hosted and operated by Frank and Mindy Maialetti is below:



44.     On or about September 3, 2025, APA discovered that Frank and Mindy

Maialetti would be hosting and operating yet another amateur pool tournament in

Philadelphia, Pennsylvania with the Ultimate Pool League when Frank Maialetti posted a

registration page on Facebook.  As shown below, Frank Maialetti wrote, "Would like to

start league play within the next 2 weeks!":



**Frank Maialetti** ✔
September 3 at 9:22 AM · 🌐

Ok everyone looking to get the teams signed up this week, Would like to start league play within the next 2 weeks!
Sign up here please. ... **See more**



## Ultimate Pool League Philadelphia Registration

Teams are now forming for the hottest league action in the area. Matches for the inaugural session will be played at:
Bluegrass Billiards
9490 Bluegrass Road
Philadelphia PA 19114

Get signed up today!

* Indicates required question

DOCS.GOOGLE.COM
**Ultimate Pool League Philadelphia Registration**
Teams are now forming for the hottest league action in the area. Matches for the inaugural ses...

🔵 2                                                    4 comments  1 share

👍 Like              💬 Comment              ↪ Share

View more comments

45.    Ultimate Pool League is a direct competitor of APA and APA-Philadelphia.

46.    Frank Maialetti is actively promoting the Ultimate Pool League and he claims he can "convert any skill/league ranking to make it competitive and fun." This is exactly what APA does with its Leagues through its "uniform system for establishing, operating and developing local amateur pool leagues," its "uniform standards, specifications, policies, procedures, guidelines, rules, and methods for league operation,

13

management, marketing and promotion," and its utilization of ***The Equalizer*®** to make its leagues more "competitive and fun" for amateur pool players.

47.    Upon information and belief, Frank Maialetti and/or Mindy Maialetti intend to use their knowledge of (1) APA's System, including its standards, specifications, policies, procedures, guidelines, rules, and methods of league operations, (2) the NEXUS System, and (3) ***The Equalizer*®** to actively compete with APA leagues.

**COUNT I**
**BREACH OF CONTRACT**
**(Against Frank Maialetti)**

48.    APA repeats the foregoing allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

49.    Frank's Agreement represents a valid contract, supported by mutual consideration, by and between Frank Maialetti and APA-Philadelphia.

50.    APA, the plaintiff in this cause of action, is a third-party beneficiary of Frank's Agreement.

51.    By executing Frank's Agreement, Mr. Maialetti agreed:

… that for a period of (2) years after the termination of [his] affiliation with the [APA] League, regardless of the cause, reason or justification, [he] will not, directly or indirectly (a) have any interest in as owner, partner, director, officer, employee, consultant, representative or agent, or otherwise engage in or lend knowledge or support to any non-APA pool league, tournament, or event or any business operating any pool league, tournament or event within the Franchised Territory or any adjacent county; (b) engage in support, or assist in the solicitation of any APA Members, Host Locations, or league sponsors that have participated in, or supported, the Franchised League to participate in, or support, any non-APA pool league, tournament or events within the Franchised Territory or any adjacent county, or (c) have any interest in as owner, partner, director, officer, employee, consultant, representative or agent, or otherwise engage in or lend knowledge or support to any business engaged in franchising, licensing, or otherwise

14

establishing, developing or managing a national or regional pool league operation; provided that this section shall not prohibit [him] from playing in any non-APA pool league, tournament or event, or from owning less than five percent (5%) of any company listed on any national securities exchange.

Ex. 1, § 3.

52.     Mr. Maialetti breached his agreement by (a) maintaining an ownership interest in a non-APA pool league within two (2) years of ending his affiliation with APA-Philadelphia; (b) supporting and assisting in the solicitation of APA Members, Host Locations, and/or league sponsors that have participated in or supported APA-Philadelphia to participate in and support a non-APA pool league; and (c) using the relationships built through APA's confidential and proprietary information to operate and promote a competing pool league.

53.     Unless Mr. Maialetti is enjoined by the foregoing conduct, APA will be immediately and irreparably harmed by the breach of Frank's Agreement through the loss of future revenue and by damage to APA's reputation.

54.     APA has no adequate remedy at law.

55.     APA has been and continues to be irreparably harmed by Mr. Maialetti's breach of Frank's Agreement and the restrictive covenant in Frank's Agreement.

56.     Prior to filing suit, APA made an unsuccessful attempt to resolve the parties' dispute.

57.     Unless the requested temporary, preliminary, and permanent injunctions are issued, APA will continue to suffer irreparable harm due to Mr. Maialetti's violations set forth herein.

15

58.     If injunctive relief is not granted, the harm to APA will outweigh any harm to Defendants.

59.     Public policy will be served by the entry of the requested injunctive relief as it will promote the public policy of enforcing contractual rights and obligations and avoiding confusion in the marketplace.

60.     APA submits no bond is necessary to support the requested temporary and preliminary injunctions because Frank and Mindy will merely be required to honor the terms of their Agreements, which will not prevent them from making a living.

**COUNT II**
**BREACH OF CONTRACT**
**(Against Mindy Maialetti)**

61.     APA repeats the foregoing allegations set forth in this Complaint and incorporates them by reference herein in their entirety.

62.     Mindy's Agreement represents a valid contract, supported by mutual consideration by between Mindy Maialetti and APA-Philadelphia.

63.     APA, the plaintiff in this cause of action, is a third-party beneficiary of Mindy's Agreement.

64.     By executing Mindy's Agreement, Ms. Maialetti agreed:

… that for a period of (2) years after the termination of [her] affiliation with the [APA] League, regardless of the cause, reason or justification, [she] will not, directly or indirectly (a) have any interest in as owner, partner, director, officer, employee, consultant, representative or agent, or otherwise engage in or lend knowledge or support to any non-APA pool league, tournament, or event or any business operating any pool league, tournament or event within the Franchised Territory or any adjacent county; (b) engage in support, or assist in the solicitation of any APA Members, Host Locations, or league sponsors that have participated in, or supported, the Franchised League to participate in, or support, any non-APA

16

pool league, tournament or events within the Franchised Territory or any adjacent county, or (c) have any interest in as owner, partner, director, officer, employee, consultant, representative or agent, or otherwise engage in or lend knowledge or support to any business engaged in franchising, licensing, or otherwise establishing, developing or managing a national or regional pool league operation; provided that this section shall not prohibit [him] from playing in any non-APA pool league, tournament or event, or from owning less than five percent (5%) of any company listed on any national securities exchange.

Ex. 2, § 3.

65.     Ms. Maialetti breached her agreement by (a) maintaining an ownership interest in a non-APA pool league within two (2) years of ending her affiliation with APA-Philadelphia; (b)  supporting and assisting in the solicitation of APA Members, Host Locations, and/or league sponsors that have participated in or supported APA-Philadelphia to participate in an support a non-APA pool league; and (c) using APA's confidential and proprietary information to operate and promote a competing pool league.

66.     Unless Ms. Maialetti is enjoined by the foregoing conduct, APA will be immediately and irreparably harmed by the breach of Mindy's Agreement through the loss of future damages and by damage to APA's reputation.

67.     APA has no adequate remedy at law.

68.     APA has been and continues to be irreparably harmed by Ms. Maialetti's breach of Mindy's Agreement and the restrictive covenant in Mindy's Agreement.

69.     Prior to filing suit, APA made unsuccessful attempts to resolve the parties' dispute.

4928-1310-1169, v. 2

70.     Unless the requested temporary, preliminary, and permanent injunctions are issued, APA will continue to suffer irreparable harm due to Ms. Maialetti's violations set forth herein.

71.     If injunctive relief is not granted the harm to APA will outweigh any harm to Defendants.

72.     Public policy will be served by the entry of the requested injunctive relief as it will promote the public policy of enforcing contractual rights and obligations and avoiding confusion in the marketplace.

73.     APA submits no bond is necessary to support the requested temporary and preliminary injunctions because Defendants will merely be required to honor the terms of Mindy's Agreement, which will not put them out of business.

### COUNT III
### DEFEND TRADE SECRETS ACT (18 U.S.C. §1836)
**(Against Frank and Mindy Maialetti)**

74.     As stated herein, *The Equalizer*® is APA's proprietary and confidential scoring and handicapping system it uses that allows pool players of all abilities to compete, and it is the backbone of APA's business and franchise model.

75.     *The Equalizer*®, APA's system for establishing, operating, and developing local amateur pool leagues, and its other Confidential Information has tremendous economic value.

76.     APA takes reasonable steps to keep *The Equalizer*®, its system for establishing, operating, and developing local amateur pool leagues, and its other Confidential Information secret, including utilizing security protocols in its computer

18

systems, requiring those with access to any Confidential Information to sign Confidentiality and Non-Competition Agreements, and only allowing access to certain individuals within APA's system.

77.    APA has franchisees in 49 states, and each of those franchisees is allowed to utilize *The Equalizer®*, APA's system for establishing, operating, and developing local amateur pool leagues, and its other Confidential Information.

78.    Frank and Mindy Maialetti are utilizing their knowledge of APA's Confidential Information to establish, operate, and develop the Ultimate Pool League.

79.    Frank and Mindy Maialetti are utilizing APA's Confidential Information to establish, operate, and develop the Ultimate Pool League – Philadelphia.

80.    APA has been damaged, and will continue to be damaged, by Frank and Mindy Maialetti's unlawful use of APA's trade secrets.

**WHEREFORE**, APA respectfully requests this Court enter judgment in its favor and grant a temporary restraining order and preliminary and permanent injunction enjoining Frank and Mindy Maialetti, their officers, agents, servants, employees, and attorneys, and/or any other person in active concert with them or their agents, servants, employees, and attorneys:

a.    from having any interest in as owner, partner, director, officer, employee, consultant, representative, or agent, or otherwise engaging in or lending knowledge or support to any non-APA pool league, tournament or event or any business operating any pool league, tournament, or event within Philadelphia County or any adjacent county;

b.    from engaging in, supporting, or assisting in the solicitation of any APA Members, Host Locations, or league sponsors that have participated in, or supported, APA of Philadelphia to participate in, or support, any non-APA

19

pool league, tournament, or events within Philadelphia County or any adjacent county;

c.     from having any interest in as owner, partner, director, officer, employee, consultant, representative, or agent, or otherwise engaging in or lending knowledge or support to any business engaged in franchising, licensing, or otherwise establishing, developing or managing a national or regional pool league operation;

d.     from divulging in any way any "Confidential Information" as that term is defined in Frank and Mindy's Confidentiality and Non-Competition Agreements with APA, including, but not limited to, all lists and records of past and present APA members, host locations and sponsors, and potential APA members, potential host locations and potential sponsors;

e.     from using any "Confidential Information" as that term is defined in their Confidentiality and Non-Competition Agreements in any other business or capacity;

f.     from making copies of any "Confidential Information" as that term is defined in their Confidentiality and Non-Competition Agreements.

Respectfully submitted,

/s/ *Joseph W. Catuzzi*

Joseph W. Catuzzi, Esquire
STRADLEY, RONON, STEVENS
& YOUNG, LLP
2005 Market Street, Suite 2600
Philadelphia, PA 19103
(215) 564-8000
(215) 564-8000

*Attorneys for Plaintiff,*
*American Poolplayers Association, Inc.*

Dated:  October 14, 2025

20

**VERIFICATION**

STATE OF _Missouri_                    )
                                       ) ss.
COUNTY OF _St. Charles_                )

I, _Pamela Aston_____, of lawful age, and after being first duly

sworn on oath, state that I am authorized by the American Poolplayers Association, Inc.

to sign this Verification, I have read the above and foregoing Verified Complaint against

Defendants Frank Maialetti and Mindy Maialetti and know the contents thereof, and that

such allegations are true according to the best of my knowledge and belief.  I make this

statement subject to the penalties of 28 U.S.C. § 1746 relating to unsworn falsification to

authorities.


_____


Subscribed and sworn to before me this  _10_  day of October, 2025.


_____
Notary Public


My Commission Expires:

_February 28, 2027_

AMANDA S MOON
NOTARY PUBLIC - NOTARY SEAL
STATE OF MISSOURI
MY COMMISSION EXPIRES FEBRUARY 28, 2027
ST. CHARLES COUNTY
COMMISSION #23247479

4928-1310-1169, v. 1